**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

JUSTIN AUMAN KEENE,

            Petitioner,

vs.

JOHN AULT,

            Respondent.

No. C03-1041-MWB

**REPORT AND RECOMMENDATION**

_____

*TABLE OF CONTENTS*

**I.**    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**II.**   **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

      **A.**   *Habeas Petitions in General* . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

      **B.**   *Ineffective Assistance of Counsel Claims* . . . . . . . . . . . . . . . . . . . . **6**

**III.**  **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

      **A.**   *Iowa Courts' Findings of Fact* . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

      **B.**   *Constitutionality of Iowa Code Section 709C.1* . . . . . . . . . . . . . . . . . **10**

      **C.**   *Incomplete Factual Basis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

      **D.**   *Collateral Consequences of Plea* . . . . . . . . . . . . . . . . . . . . . . . . **27**

**IV.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **33**

This matter is before the court on the Amended Petition for writ of *habeas corpus* filed by the petitioner Justin Auman Keene. Doc. No. 11. Keene challenges his conviction and resulting confinement in the Iowa state courts on the basis that his trial counsel was ineffective in three respects: (1) failing to challenge Iowa Code section 709C.1 as unconstitutionally vague; (2) allowing Keene to plead guilty when there was an insufficient factual basis to support the plea; and (3) failing to inform Keene fully about the collateral consequences of his plea. Doc. Nos. 11 & 21.

## I. PROCEDURAL BACKGROUND

On March 10, 2000, Keene pled guilty to a charge of criminal transmission of the human immunodeficiency virus ("HIV"), in violation of Iowa Code section 709C.1, as well as an unrelated charge involving dissemination of obscene materials to a minor in violation of Iowa Code section 728.2(2). Other related charges were dropped. On March 17, 2000, Keene filed a *pro se* motion "to set aside plea agreement," asking that his attorney be allowed to argue, at the time of sentencing, a previously-filed motion to dismiss the Trial Information. Keene stated he wanted to go forward with sentencing; he just wanted to be heard on the motion beforehand. *See* Doc. No. 14 ¶ 2(e), Appendix in *State v. Keene*, Sup. Ct. No. 00-643 (Iowa Sept. 21, 2000) (hereafter "App."), at 45. At the time of the sentencing hearing on March 24, 2000, Keene withdrew all pending *pro se* motions and indicated a desire to proceed with sentencing. He was sentenced to twenty-five years' imprisonment on the HIV transmission charge, and one year on the charge of dissemination of obscene material to a minor. Both sentences were suspended for five years and Keene was placed on probation. He also was ordered to reside successfully for twelve months "or until maximum benefits are received" at the Elm

Street Correctional Facility, and to complete successfully a sexual offender treatment program, an anger management class, and a life skills class. *See* App. at 31-33, 47-48.

Keene filed a direct appeal on April 7, 2000, claiming his attorney had been "ineffective in allowing him to plead guilty because the statute [*i.e.*, Iowa Code § 709C.1] was vague and . . . there was no factual basis for the guilty plea." Doc. No. 21 at 1. The Iowa Supreme Court denied his appeal on July 5, 2001. On July 9, 2001, Keene's probation was revoked, and he was incarcerated. Keene filed an application for postconviction relief that was denied on June 18, 2002. He appealed the denial of postconviction relief, and the Iowa Supreme Court dismissed his appeal as frivolous on May 27, 2003. *See* Doc. No. 21 at unnumbered p. 2; Doc. No. 23-1 at 4.

Keene timely filed the instant action on November 19, 2003. The court appointed an attorney to represent Keene, and the Amended Petition currently before the court was filed on March 19, 2004. Doc. No. 11. Keene filed a brief in support of his petition on August 23, 2004. Doc. No. 21. The respondent filed a responsive brief and an appendix of state court decisions on October 11, 2004. Doc. No. 23 (duplicated at Doc. No. 24). On September 20, 2004, Chief Judge Mark W. Bennett referred this matter to the undersigned for review and the filing of a report and recommended disposition. Doc. No. 22. The court finds the matter is ready for decision, and turns to consideration of Keene's petition.

## II.  STANDARD OF REVIEW

### A.  Habeas Petitions in General

The United States Supreme Court set forth the standard for federal courts reviewing habeas petitions filed by state prisoners in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The *Williams* analysis focuses on the

requirements of the federal *habeas* statute, 28 U.S.C. § 2254, in light of amendments enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court held as follows:

> Section 2254(d)(1) defines two categories of cases in which a State prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in State court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05, 120 S. Ct. at 1519 (quoting 28 U.S.C. § 2254(d)(1)).

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the State court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of Supreme Court clearly-established precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the State court identifies the

> correct governing legal rule from this Court's cases but
> unreasonably applies it to the facts of the particular State
> prisoner's case. Second, a state-court decision also involves
> an unreasonable application of this Court's precedent if the
> State court either unreasonably extends a legal principle from
> our precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new context
> where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a State court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520. Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then,
> a federal habeas court may not issue the writ simply because
> that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established
> federal law erroneously or incorrectly. Rather, that
> application must also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the State court decision was not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the State court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## B. Ineffective Assistance of Counsel Claims

Keene has raised three allegations relating to his attorney's effectiveness, each of which is discussed below. The standard for proving ineffective assistance of counsel was established by the Supreme Court in *Strickland v. Washington*:

> *First*, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) (emphasis added). The reviewing court must determine "whether counsel's assistance was reasonable considering all the circumstances." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2065.

The defendant's burden is considerable, because "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, 466 U.S. at 689, 104 S. Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." *James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996).

Furthermore, even if the defendant shows counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside

the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067.

Thus, the prejudice prong of *Strickland* requires a petitioner, even one who can show that counsel's errors were unreasonable, to go further and show the errors "actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* *See Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997)). Rather, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

A petitioner must satisfy both prongs of *Strickland* in order to prevail on an ineffective assistance of counsel claim. *See id.*, 466 U.S. at 687, 104 S. Ct. at 2064. It is not necessary to address the performance and prejudice prongs in any particular order, nor must both prongs be addressed if the district court determines the petitioner has failed to meet one prong. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069. Indeed, the *Strickland* Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Tokar v. Bowersox*, 198 F.3d 1039, 1046 (8th Cir. 1999) (citing *Strickland*).

In short, a conviction or sentence will not be set aside "solely because the outcome would have been different but for counsel's error, rather, the focus is on whether 'counsel's deficient performance renders the result of the trial unreliable or the

proceeding fundamentally unfair.'" *Mansfield v. Dormire*, 202 F.3d 1018, 1022 (8th Cir. 2000) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)). In the final analysis, "an accused is only entitled to a fair trial, not a perfect one." *State v. King*, 256 N.W.2d 1, 12 (Iowa 1977) (citing *Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 1060, 31 L. Ed. 2d 340 (1972); *State v. Kelsey*, 201 N.W.2d 921, 927 (Iowa 1972)).

## III.  DISCUSSION

### A.  Iowa Courts' Findings of Fact

In its consideration of Keene's appeal, the Iowa Supreme Court made the following findings of fact which are presumed to be correct, in the absence of clear and convincing evidence to the contrary; *see* 28 U.S.C. § 2254(e)(1); *Cox v. Burger*, 398 F.3d 1025, 1028 (8th Cir. 2005):

> Justin Keene was charged by trial information with criminal transmission of the HIV. The charge stemmed from a sexual encounter with a woman we identify as C.J.H. Keene agreed to plead guilty to the crime in exchange for a lenient sentence.
>
> Before accepting Keene's guilty plea, the district court determined that Keene was voluntarily and intelligently entering the plea and that a factual basis existed for the plea. [FN2]  The court relied upon the minutes of testimony and statements made by Keene during the guilty plea proceeding to find a factual basis.
>
> > [FN2]  Keene does not contend he did not enter the plea voluntarily and intelligently. Thus, we limit our discussion to those facts concerning the factual basis of the plea.

The minutes of testimony included the testimony of C.J.H. C.J.H. has a mental illness and met Keene while she worked at a McDonald's restaurant. They had a brief romance and engaged in consensual, unprotected sexual intercourse on October 9, 1998. C.J.H. was uncertain whether or not Keene ejaculated during the sexual encounter, and was unaware of Keene's HIV status. C.J.H. further stated that Keene accompanied her to Hillcrest Family Services in Dubuque on October 16 for a pregnancy test. During this visit, C.J.H. expressed her desire to conceive a baby with Keene to Hillcrest nurse Kathy Meyer. Keene subsequently questioned Meyer concerning "what having AIDS meant to having a child."

The testimony of Meyer confirmed the October 16 meeting at Hillcrest with C.J.H. and Keene. Meyer reiterated Keene's questions regarding the transmission of the HIV and the potential effects on a baby conceived by an HIV positive parent. Furthermore, Meyer stated C.J.H. appeared surprised when Keene questioned Meyer about the HIV's effect on babies.

The minutes of testimony also included the statements of Dubuque police officer Tom Parker, who investigated the charge against Keene. Keene admitted to Parker that he engaged in consensual, unprotected sexual intercourse with C.J.H. on October 9. Keene believed he did not ejaculate during the October 9 encounter, but if he did ejaculate, he did so only on his or C.J.H.'s stomach. Additionally, Keene acknowledged his visit to Hillcrest with C.J.H. on October 16. Keene further informed Parker that he was infected with the HIV and that he did not notify C.J.H. of the infection prior to engaging in sexual intercourse.

Parker was prepared to additionally testify to his subsequent interview with C.J.H. C.J.H. told Parker she had consensual, unprotected vaginal intercourse with Keene on October 9, but could not recall whether Keene ejaculated during the intercourse.

The minutes of testimony also listed Keene's physician, Dr. Jack Stapleton. He would testify to Keene's HIV positive status during October 1998. Kris Keene, Keene's mother, would provide the same testimony. Mary Rose Corrigan, a public health nurse with the Dubuque Health Department, would testify to the risk of exposure to the HIV during sexual contact with an infected individual. Elizabeth Blasen, a co-worker of both C.J.H. and Keene in October 1998, stated she warned C.J.H of rumors concerning Keene's HIV status. Lastly, Robert Bradfield, Keene's cellmate at the Dubuque County Jail, stated Keene admitted he had unprotected sexual intercourse with C.J.H. without informing her he was HIV positive.

In response to the district court's questions concerning the factual basis of the guilty plea, Keene stated that the witnesses would be telling the truth if they testified according to the minutes of testimony. Although Keene acknowledged that the State could prove the elements of the charge beyond a reasonable doubt, he claimed he never intended to expose C.J.H. to the HIV. However, Keene admitted that he knew he was HIV positive when he had sexual intercourse with C.J.H.

Finding a factual basis, the district court accepted the guilty plea and advised Keene of his right to file a motion in arrest of judgment to challenge the plea. Keene subsequently received a twenty-five year suspended prison sentence and was placed on probation.

*State v. Keene*, 629 N.W.2d 360, 362-63 (Iowa 2001).

### B. Constitutionality of Iowa Code Section 709C.1

Keene argues his counsel was ineffective in failing to challenge Iowa Code section 709C.1 as being unconstitutionally vague. Section 709C.1 provides as follows:

1.    A person commits criminal transmission of the human immunodeficiency virus if the person, knowing that the person's human immunodeficiency virus status is positive, does any of the following:

  a.  Engages in intimate contact with another person.

    b.    Transfers, donates, or provides the person's blood, tissue, semen, organs, or other potentially infectious bodily fluids for transfusion, transplantation, insemination, or other administration to another person.

    c.    Dispenses, delivers, exchanges, sells, or in any other way transfers to another person any nonsterile intravenous or intramuscular drug paraphernalia previously used by the person infected with the human immunodeficiency virus.

2.   For the purposes of this section:

    a.    "Human immunodeficiency virus" means the human immunodeficiency virus identified as the causative agent of acquired immune deficiency syndrome.

    b.   "Intimate contact" means the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus.

    c.   "Intravenous or intramuscular drug paraphernalia" means any equipment, product, or material of any kind which is peculiar to and marketed for use in injecting a substance into or withdrawing a bodily fluid from the human body.

3.    Criminal transmission of the human immunodeficiency virus is a class "B" felony.

4.    This section shall not be construed to require that an infection with the human immunodeficiency virus has occurred for a person to have committed criminal transmission of the human immunodeficiency virus.

> 5. It is an affirmative defense that the person exposed to the human immunodeficiency virus knew that the infected person had a positive human immunodeficiency virus status at the time of the action of exposure, knew that the action of exposure could result in transmission of the human immuno-deficiency virus, and consented to the action of exposure with that knowledge.

Iowa Code § 709C.1 (1998).

Keene argues the statute is impermissibly vague because its description of the proscribed conduct "is so wide open that there are no limits on the statute." Doc. No. 21 at unnumbered p. 4. Specifically, Keene claims the definition of "intimate contact" is vague where it provides the conduct "could result" in the transmission of HIV. *Id.* He argues, "There have been many myths about HIV over the years, including the threat of transmission by the use of common serving utensils or from mosquitos. The merest of possibilities would result in a possible conviction under this statute. There must be some reasonable probability of transmission, not just the merest hint of a possibility." *Id.*, unnumbered pp. 4-5.

The Iowa Supreme Court noted that although Keene had not labeled his argument "as a vague-as-applied challenge," the court was treating it as such, finding Keene's guilty plea had not waived such a claim. *State v. Keene*, 629 N.W.2d 360, 364 n.3 (Iowa 2001). The Iowa court found Keene had not preserved error on a facial vagueness claim, and he had not advanced such a claim on appeal. *Id.*

Considering Keene's claim that the statute was vague as applied to him, the Iowa Supreme Court held as follows:

> We begin our analysis of the challenge to section 709C.1 with the presumption that a statute is constitutional. *State v. White*, 545 N.W.2d 552, 557 (Iowa 1996); *State v. Sylvester*, 516 N.W.2d 845, 849 (Iowa 1994). To overcome

this heavy burden, the party challenging the statute must prove beyond a reasonable doubt the statute's unconstitutionality. *[State v. ]Robinson*, 618 N.W.2d [306,] 314 [(Iowa 2000)]; *White*, 545 N.W.2d at 557; *Sylvester*, 516 N.W.2d at 849. To do so, the challenger must refute every reasonable basis upon which the statute could be found to be constitutional. *Robinson*, 618 N.W.2d at 314; *[In re] Morrow*, 616 N.W.2d [544,] 547 [(Iowa 2000)].

To withstand a vagueness challenge, a criminal statute must sufficiently define the offense so that ordinary people have fair notice of what type of conduct is prohibited under the statute. *Robinson*, 618 N.W.2d 314; *State v. Milner*, 517 N.W.2d 7, 14 (Iowa 1997); *Sylvester*, 516 N.W.2d at 849. Moreover, explicit standards protect against arbitrary and discriminatory enforcement by those applying the statute. *Milner*, 571 N.W.2d at 14.

However, a statute need not contain express definitions of its terms. *State v. Osmundson*, 546 N.W.2d 907, 909 (Iowa 1996). Fair notice of prohibited conduct is provided "if the meaning of the words used can be fairly ascertained by referenced to their ordinary and usual meaning, the dictionary, similar statutes, the common law, or previous judicial determinations." *Id.*; *see Milner*, 571 N.W.2d at 15. We must give effect to each statutory term, *Osmundson*, 546 N.W.2d at 910, and consider the statute together with the entire statutory scheme to which it belongs. *Robinson*, 618 N.W.2d at 314-15.

Iowa Code section 709C.1 criminalizes the transmission of the HIV. Iowa Code § 709C.1. A person violates section 709C.1 if he "[e]ngages in intimate contact with another person" while knowing he is HIV positive. *Id.* § 709C.1(1)(a). [Footnote omitted.] Section 709C.2(b) defines intimate contact as "the intentional exposure of the body of one person to a bodily fluid of another person in a manner that *could result* in the transmission of the [HIV]." *Id.* § 709C.1(2)(b) (emphasis added). The person exposed to

the HIV need not become infected with the virus in order for the infected person to be prosecuted under this section. *Id.* § 709C.1(4). However, if the exposed person was aware of the infected person's HIV positive status, an affirmative defense exists. *Id.* § 709C.1(5).

Keene claims section 709C.1 is unconstitutionally vague because the term "could result" is not defined in the statute. Keene argues that the meaning of "could" is unclear, and thus he was not fairly warned that his conduct was prohibited by the statute.

We find the statute is sufficiently clear and consequently provides a reasonably intelligent person with fair notice of its meaning. In enacting this statute, the legislature did not intend "could result" to mean "did result." *See id.* § 709C.1(4). Furthermore, "could" is the past tense of "can," which is defined as "[u]sed to indicate possibility or probability." The American Heritage Dictionary 232, 330 (2d college ed. 1985). Thus, for a person to be guilty of violating section 709C.1, it must simply be shown that transmission of the HIV from the infected person to the exposed person was *possible* considering the circumstances.

Over the past decade our nation's understanding of possible methods of transmitting the HIV has increased dramatically. It is a well-known fact that an infected individual may possibly transmit the HIV through unprotected sexual intercourse with his or her partner. *See State v. Stark*, 66 Wash. App. 423, 832 P.2d 109, 116 (1992). We take judicial notice of the fact that the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus. *See People v. Russell*, 158 Ill. 2d 23, 196 Ill. Dec. 784, 610 N.E.2d 208, 223 (1993); *State v. Mahan*, 971 S.W.2d 307, 309 (Mo. 1998); *State v. Hutchinson*, 135 Ohio App. 3d 569, 734 N.E.2d 454, 457 (1999). In fact, our own statutes recognize the risk of transmission during sexual intercourse and in other activities

that involve the use of bodily fluids. *See* Iowa Code § 915.40(11) (presumption of significant exposure to the HIV when infected individual engages in sexual intercourse); [footnote omitted] § 709C.1(1)(b) (recognizing semen and blood as potentially infectious bodily fluids). Thus, any reasonably intelligent person is aware it is possible to transmit HIV during sexual intercourse, especially when it is unprotected.

We find that Keene was aware of the risk of transmission of the HIV when he engaged in unprotected sexual intercourse with C.J.H. When an individual is diagnosed with the HIV, a doctor typically informs the patient of the risks of exposure. *See Mahan*, 971 S.W.2d at 309 n.3 (those diagnosed with the HIV receive significant counseling from public health officials concerning prevention of the spread of the virus); *see also Stark*, 832 P.2d at 114-16 (doctor had administered several counseling sessions to defendant). However, even if Dr. Stapleton had not counseled Keene on prevention, we can reasonably infer that Keene knew that the HIV could be transmitted during sexual intercourse. The questions Keene propounded to [Nurse] Meyer during the October 16 visit to Hillcrest concerning the transmission of the HIV to babies conceived by an infected parent indicate Keene's knowledge on the subject of transmission. Additionally, any claim by Keene that he did not ejaculate on October 9 or that if he did ejaculate, he ejaculated outside of C.J.H.'s body, is irrelevant. *See Stark*, 832 P.2d at 114. Moreover, section 709C.1 only requires the body of one person to be exposed to the bodily fluid of another. *See* Iowa Code § 709C.1(2)(b) (defining intimate contact).

Consequently, we reject Keene's vague-as-applied claim. In doing so, we recognize that we are not the first state to reject such a challenge. Several states with nearly identical criminal transmission statutes have rejected similar constitutional challenges. *See Russell*, 196 Ill. Dec. 629, 630 N.E.2d at 796; *State v. Gamberella*, 633 So. 2d 595, 602-03

> (La. Ct. App. 1993); *People v. Jensen*, 231 Mich. App. 439,
> 586 N.W.2d 748, 751-52 (1998); *Mahan*, 971 S.W.2d at 309,
> 312; *Stark*, 832 P.2d at 115-16.

*Keene*, 629 N.W.2d at 364-66. Because the Iowa court found the statute was not unconstitutionally vague as applied to Keene, the court therefore found his trial counsel was not ineffective in failing to challenge the constitutionality of the statute. *Keene*, 629 N.W.2d at 367.

The PCR court declined to consider the claim because it had been decided adversely by the Iowa Supreme Court. The PCR court noted that on appeal, Keene had challenged the "could result" language, and to the extent Keene might be trying to challenge a different aspect of the statute in his PCR proceedings, he had waived the ability to do so by failure to raise and pursue an alternative argument on appeal. *Keene v. State*, No. PCCV052826 (Dubuque Cty, Iowa, June 18, 2002) ("PCR Ruling"), Doc. No. 23-2 at 20.

In addressing Keene's constitutional challenge to the statute, neither the Iowa Supreme Court nor the PCR court relied upon U.S. Supreme Court precedents. Therefore, this court must identify existing Supreme Court law on the issue to determine whether the Iowa courts' decisions are consistent with Supreme Court jurisprudence. The Supreme Court has defined the law in this area in some detail.

Quoting Supreme Court precedent, the Eighth Circuit Court of Appeals explained the nature of the void-for-vagueness doctrine in *D.C. & M.S. v. City of St. Louis, Missouri*, 795 F.2d 652 (8th Cir. 1986):

> The void-for-vagueness doctrine is embodied in the due
> process clauses of the fifth and fourteenth amendments.
> *Postscript Enterprises, Inc. v. Whaley*, 658 F.2d 1249 (8th
> Cir. 1981). Due process requires that laws provide fair notice
> of what is prohibited, as well as standards of enforcement.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222 (1972) (footnotes omitted). *See also Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 3254, 82 L. Ed. 2d 462 (1984); *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983); *Colautti v. Franklin*, 439 U.S. 379, 390-91, 99 S. Ct. 675, 683-84, 58 L. Ed. 2d 596 (1979); *United States v. Huckaby*, 698 F.2d 915, 920 (8th Cir. 1982), *cert. denied*, 460 U.S. 1070, 103 S. Ct. 1526, 75 L. Ed. 2d 948 (1983); *Postscript Enterprises, Inc.*, 658 F.2d at 1254; *Casbah, Inc. v. Thone*, 651 F.2d 551, 558 (8th Cir. 1981), *cert. denied*, 455 U.S. 1005, 102 S. Ct. 1642, 71 L. Ed. 2d 874 (1982); *Geiger v. City of Eagan*, 618 F.2d 26, 28 (89th Cir. 1980).

*D.C. & M.S.*, 795 F.2d at 653-54.

The Supreme Court has provided clear guidance in how to apply the void-for-vagueness doctrine to examination of a particular statute. "It is well established that

vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 US. 544, 550, 95 S. Ct. 710, 714, 42 L. Ed. 2d 706 (1975) (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963)); *see United States v. Wheeler*, 972 F.3d 927, 929 (8th Cir. 1992) (quoting *Mazurie*). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547l, 2561, 41 L. Ed. 2d 439 (1974).

> Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 811, 98 L. Ed. 989 (1954). In determining the sufficiency of the notice[,] a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Robinson v. United States*, 324 U.S. 282, 65 S. Ct. 666, 89 L. Ed. 944 (1945).

*United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33, 83 S. Ct. 594, 598, 9 L. Ed. 2d 561 (1963). Notably, "[w]hen violations carry criminal penalties, a strict test of specificity is applied in reviewing the vagueness of a statute." *D.C. & M.S.*, 795 F.2d at 653 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *Garner v. White*, 726 F.2d 1274, 1278 (8th Cir. 1984); *Murphy v. Matheson*, 742 F.2d 564, 570 (10th Cir. 1982)).

As noted above, Keene argues the statute is vague because it prohibits actions that "could result" in the transmission of HIV. He claims a person could be convicted under the statute for conduct resulting in the "merest of possibilities" of HIV transmission, intimating conduct such as using common serving utensils could result in conviction under the statute. *See* Doc. No. 21 at unnumbered pp. 4-5. The court can envision circumstances where sharing utensils *could*, in fact, violate the statute, such as where an

HIV-positive person spit into a utensil and then fed another with that utensil. The conduct would intentionally expose "the body of one person to a bodily fluid of another person in a manner that could result in the transmission of [HIV]." Iowa Code § 709C.1(2)(b). In such a case, however, as in the case of having unprotected sexual intercourse with an unknowing partner, there can be no doubt that the statute specifically applies to the conduct. The crux of the statute is to punish an HIV-positive person for exposing an unknowing person to the risk of transmission of the virus. The language of the statute is clear and unambiguous, and provides fair notice of its terms and of the conduct it proscribes.

In this case, there is clear evidence that Keene knew of his HIV-positive status; he had unprotected sex with the victim; he knew about the risk of transmitting the virus through unprotected sex; and he did not inform the victim about his HIV-positive status. The statute clearly applies to this conduct, and its language is clear enough for any reasonable person to understand. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547l, 2561, 41 L. Ed. 2d 439 (1974). This court finds Keene has failed to show the statute in question is unconstitutional as applied to him in this case.

Because Keene's void-for-vagueness claim must fail, his trial counsel cannot have been ineffective in failing to challenge the statute. Therefore, Keene's claim for ineffective assistance of counsel must fail as to this argument.

### C. Incomplete Factual Basis

Keene next argues his counsel was ineffective in allowing him to plead guilty to the section 709C.1 offense when the record contained an incomplete factual basis for the plea. The Iowa Supreme Court held as follows regarding this claim:

Before accepting a guilty plea, the district court must establish on the record a factual basis for the plea. Iowa R. Crim. P. 8(2)(b); *see State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999); *State v. Williams*, 224 N.W.2d 17, 18-19 (Iowa 1974). The court may consider the minutes of testimony, statements of the prosecutor and the defendant from the guilty plea colloquy, and the presentence investigation report. *Schminkey*, 597 N.W.2d at 788. Trial counsel commits ineffective assistance when he permits a defendant to plead guilty to an offense lacking a factual basis in the record. *Id.* In addition, the defendant is inherently prejudiced under such circumstances. *Id.*

Keene contends a factual basis was not established because the record failed to show how sexual intercourse "could result" in the transmission of the HIV. In essence, this is the same argument advanced in the challenge to the constitutionality of the statute.

We conclude our above analysis concerning the vagueness argument applies with equal force to Keene's factual basis clam. In establishing a factual basis, the district court relied upon the minutes of testimony and Keene's statements during the guilty plea colloquy which included his admission to engaging in unprotected sexual intercourse while knowing he was infected with the HIV. Considering Keene's admission together with the well-known fact of the risk of transmission of the HIV through unprotected sexual intercourse, in addition to the minutes of testimony, we conclude a factual basis existed to support Keene's plea of guilty. *See State v. Randall*, 258 N.W.2d 359, 362 (Iowa 1977). Accordingly, Keene's counsel did not provide ineffective assistance when he permitted Keene to plead guilty and when he did not file a motion in arrest of judgment. *See [State v.] Carter*, 582 N.W.2d [164,] 165-66 [(Iowa 1998)]; *State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996). Thus, Keene's ineffective assistance claim is without merit.

*Keen*, 629 N.W.2d at 366-67.

The transcript of the plea hearing indicates Judge Lawrence H. Fautsch, who accepted Keene's pleas of guilty, did not approve of the negotiated sentence contained in the plea agreement. However, the parties apparently had talked with another judge, Judge Pearson, who had agreed to be bound by the plea agreement and to sentence Keene, and therefore, Judge Fautsch agreed to take Keene's plea, with sentence to be imposed by Judge Pearson. *See* Plea Tr. at 3.

At the plea hearing, Judge Fautsch summarized the terms of the plea agreement, and Keene entered pleas of guilty to the two charges, as follows:

> THE COURT: I'm going to ask you then, Mr. Keene, under Criminal No. FECR35804 how you plead to the charge of Criminal Transmission of Human Immunodeficiency Virus in violation of Iowa Code Section 709C.1(1)(a). This alleges that on October 9, 1998, in Dubuque County, Iowa, you did engage in intimate physical contact, specifically sexual intercourse, with another, to-wit: A person having the initials CJH whose date of birth is April 7, 1976, while you knew that you were infected with HIV. How do you plead to that charge?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: And under FECR35050 under Count II, you are charged with Dissemination of Obscene Material To A Minor in violation of Iowa Code Section 728.2. This alleges that between June 1 of 1998 and July 29, of 1998 it states as follows: Count II, said Defendant, other than the parent or guardian of a minor, to-wit: BRG, date of birth June 14, 1984, knowingly disseminated or exhibited obscene material to said minor, to-wit: a movie depicting a sex act. How do you plead to that charge?
>
> THE DEFENDANT: Guilty.

Plea Tr. at 4-5.

Judge Fautsch then asked Keene a number of questions to ensure he had the requisite physical and mental capacity to enter into the guilty pleas, to advise Keene of the rights he would be giving up by pleading guilty, and the like. To ensure a factual basis existed for Keene's pleas, the judge engaged in the following colloquy with Keene:

> THE COURT: Okay. Mr. Keene, have you had a chance to read the Minutes of Testimony or Minutes of Evidence in both of these matters which are summaries as to what all of the State's witnesses would be expected to testify to if these matters came on for trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If all those witnesses came into court and said those things under oath, would they be telling the truth?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And if the Court was to – if you were to have a trial under FECR35804, that being the Criminal Transmission of Human Immunodeficiency Virus in violation of Iowa Code Section 709C.1(1)(a), the State would be required to prove beyond a reasonable doubt that on or about October 9, 1998, you did in Dubuque County, Iowa, engage in intimate physical contact, specifically sexual intercourse, with another person whose initials are CJH and whose date of birth is April 7, 1976, while you knew that you were infected with HIV. Do you feel that if that matter came on for trial, that the State could prove all of those elements beyond a reasonable doubt?
>
> MR. GOEN [Keene's attorney]: Your Honor, I would ask that maybe you could repeat that to Mr. Keene.
>
> THE COURT: All right. The State would be required to prove beyond a reasonable doubt the following in regard to that particular charge: That on October 9, 1998, in Dubuque County, Iowa, you did engage in intimate physical contact,

specifically sexual intercourse, with another whose initial are CJH whose date of birth is April 7, 1976, while you knew that you were infected with the human immunodeficiency virus. Do you feel that if that matter came on for trial, that the State could prove all of those elements beyond a reasonable doubt?

THE DEFENDANT: Yes. There was never intentional exposure.

THE COURT: What do you mean when you tell me that?

THE DEFENDANT: Where it says in the law intimate contact of intentional exposure of a bodily fluid to another person, but I do believe the State could prove both elements before a jury.

THE COURT: I want to make sure that I know in my own mind what it is that you're saying to me when you're trying to clarify this. Tell me once again what you feel you did not intend to do.

THE DEFENDANT: I didn't intend to – there was never intentional exposure as the law says in the one paragraph that states intimate contact.

(A discussion was held off the record.)

THE COURT: Now, I'm not trying to put words in your mouth here, Mr. Keene, and you tell me if I'm wrong, if what I'm saying here is not correct, but are you telling me that you did not intend to give the victim AIDS in this case?

THE DEFENDANT: Yes, sir.

THE COURT: So you're saying that you did not intend to transmit the human immunodeficiency virus to the victim, is that what you're saying?

THE DEFENDANT: Yes.

THE COURT: Are you denying that there was sexual intercourse between you and this individual on the date in question?

THE DEFENDANT: Am I denying it? No.

THE COURT: Are you denying that at that time you knew that you were infected with HIV?

THE DEFENDANT: No, I did know.

THE COURT: You said, No, you did know?

THE DEFENDANT: I knew I had HIV.

THE COURT: You knew that you had HIV at the time of this incident on October 9, 1998?

THE DEFENDANT: Yes.

THE COURT: All right. Do[es] either counsel know of any reason why I should not accept these guilty pleas?

MR. GOEN: No, Your Honor.

MS. CORKEN [the Prosecutor]: No, Your Honor.

THE COURT: The Court finds that the Defendant has voluntarily entered his guilty pleas, that he fully understands his rights and the consequences of his pleas and that factual bases exist for the pleas based upon the statements of the Defendant and the Minutes of Testimony.

Going back then to the second offense, Mr. Keene, do you feel that if that matter came on for trial, that being Dissemination of Obscene Material To A Minor in violation of Iowa Code Section 728.2, do you feel that the State could prove beyond a reasonable doubt at trial the following: That you, other than a parent or guardian of a minor, that minor being BRG whose date of birth is June 14, 1982, did know-ingly disseminate or exhibit obscene material to that minor, that being a movie depicting a sex act. Do you feel that the State could prove all of those elements beyond a reasonable doubt if that matter came on for trial?

THE DEFENDANT: Yes, sir.

THE COURT: In regard to that plea also then the Court finds that the Defendant has voluntarily entered his guilty plea, fully understands his rights and the consequences of his plea and that a factual basis exists for the plea. . . .

Plea Tr. at 10-14.

Similar to Keene's argument that the statute is unconstitutionally vague, he argues there was an insufficient factual basis for his plea to the charge of criminal transmission of HIV because there were no facts in the record "to demonstrate the likelihood or unlikelihood of exposure resulting in transmission [of HIV;] that is[,] there [were] no fact[s] to assist in understanding the width or narrowness of the [']could result in transmission['] element of the offense." Doc. No. 21 at unnumbered p. 6. The court has found, above, that this argument is unavailing in a challenge to the constitutionality of the statute. The argument similarly fails to support a claim that there was an insufficient factual basis for Keene's plea.

The Iowa Rules of Criminal Procedure prohibit a court from accepting a guilty plea "without first determining that the plea is made voluntarily and intelligently and has a factual basis." Iowa R. Crim. P. 2.8(2)(b). Rule 11, Federal Rules of Criminal Procedure, similarly provides a court may not enter judgment on a guilty plea until the court determines a factual basis exists for the plea. Fed. R. Crim. P. 11(b)(3). Discussing this requirement of the federal rules, the U.S. Supreme Court has explained as follows:

[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

> [I]n addition to directing the judge to inquire into the
> defendant's understanding of the nature of the charge and the
> consequences of his plea, Rule 11 also requires the judge to
> satisfy himself that there is a factual basis for the plea. The
> judge must determine "that the conduct which the defendant
> admits constitutes the offense charged in the indictment or
> information or an offense included therein to which the
> defendant has pleaded guilty." Requiring this examination of
> the relation between the law and the acts the defendant admits
> having committed is designed to "protect a defendant who is
> in the position of pleading voluntarily with an understanding
> of the nature of the charge but without realizing that his
> conduct does not actually fall within the charge."

*McCarthy v. United States*, 394 U.S. 459, 466-67, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969) (footnotes omitted).

Thus, the question here is whether Keene's conduct "constitutes the offense charged." As the court noted previously, there is clear evidence that Keene knew of his HIV-positive status; he had unprotected sex with the victim; he knew about the risk of transmitting the virus through unprotected sex; and he did not inform the victim about his HIV-positive status. This conduct falls squarely within the language of the statute, despite Keene's objection that the statute is unclear.

The court finds the Iowa court properly established a factual basis before accepting Keene's guilty plea. *Cf. United States v. Arteaga-Mendez*, 2005 WL 1138512, No. 04-2143, slip op. at 2 (8th Cir. May 16, 2005) ("Based on [the defendant's] responses during the plea colloquy, the written plea agreement, and the agreement's stipulation of facts, . . . the district court could reasonably decide [the defendant] likely committed the offense." (citing *United States v. Gamble*, 327 F.3d 662, 664 (8th Cir. 2003)). Because an adequate factual basis existed to support the plea, Keene has failed to show his counsel was ineffective in allowing him to plead guilty based on that factual

basis. The Iowa Supreme Court's decision on this issue was not contrary to U.S. Supreme Court precedent, and Keene's petition should be denied as to this issue.

### D. Collateral Consequences of Plea

Keene claims his counsel was ineffective in allowing him to plead guilty to the section 709C.1 offense because his attorney failed to inform him of all the collateral consequences of his plea, "subjecting him to the Iowa Violent Sexual Predator Act." Doc. No. 21 at 1. Although Keene acknowledges he need not have been informed of all of the collateral consequences of entering a plea, he argues "the question is not the lack of information, but was there misinformation[?]" *Id.* at unnumbered p. 7. He claims his attorney told him "the only thing he would be required to do is register" as a sexually violent predator, and the judge taking his plea echoed that information. *Id.*

During the plea hearing, the following colloquy took place between Keene and the court:

> THE COURT: Do you understand also that upon sentencing, that you will have been convicted of a sexual abuse offense and that that will be a felony conviction and that you will be required to register in the sex offender registry?
>
> THE DEFENDANT: Yes, sir. Just one question.
>
> THE COURT: Yes.
>
> THE DEFENDANT: I would be considered a violent sexual predator?
>
> MS. CORKEN [the Prosecutor]: Your Honor, I believe Mr. Keene is asking about the second process. The registry just applies to any sexual offense registered with the sheriff. The question as to the sexually violent predator would have to be resolved at a later date through the

Department of Correctional Services. Those are two separate processes.

THE COURT: What Ms. Corken has just stated is correct, and the only thing that you would be required to do upon conviction of this charge at this time would be to register pursuant to the sex offender registry; do you understand that?

THE DEFENDANT: Yes, sir.

Plea Tr. at 9-10.

Keene argues that although it is unclear whether Iowa's sexually violent predator statute would apply to him, *if* it does, *then* "he received misinformation from the judge and his attorney failed to object," constituting ineffective assistance of counsel.

The PCR trial court held as follows on this claim:

[Iowa Code] Chapter 229A creates a process for the commitment of sexually violent predators that is entirely separate from a criminal conviction and disposition. It is a civil process that can be initiated only after committee review and only by the attorney general's office. Section 229A.4 Code of Iowa.

Due process requires that Mr. Keene's guilty plea be entered intelligently and voluntarily. The issue is whether due process requires the judge who accepted the plea to tell Mr. Keene of a potential civil process that might result in his commitment. The court is required to insure that the defendant understands the direct consequences of his guilty plea. Kinnersly v. State, 494 N.W.2d 698, 700 (Iowa 1993). There is no requirement that the defendant be informed of indirect and collateral consequences. Id.

The distinction between a direct and collateral consequence can be difficult. Direct consequences are definite, immediate and largely automatic in the context of the defendant's disposition. Saadiq v. State, 387 N.W.2d 315,

28

325 (Iowa 1986). There is nothing definite, immediate or remotely automatic about the application of the Violent Sexual Predator Act to Mr. Keene as a result of this conviction. At the time of Mr. Keene's guilty plea, there was no way for the trial court to know whether any proceeding under Chapter 229A would ever be initiated.

The application of the Violent Sexual Predator Act to Mr. Keene was an indirect and collateral consequence to the guilty plea. As such, the trial court was not required to tell him about it during the guilty plea colloquy.

The burden of procuring a voluntary and intelligent guilty plea falls on counsel as well as the court. Defense counsel also must inform the defendant concerning the direct consequences of the guilty plea. Saadiq, 387 N.W.2d [at] 325-326. Counsel is not ordinarily required to tell the Defendant of indirect or collateral consequences. Such an expectation would call for conduct outside the range of normal competency. Id. When an ineffective assistance claim is based on a ground that counsel failed to take some action, the claimant must show that the attorney failed to perform an essential duty and that prejudice resulted.

The evidentiary record in this PCR does not establish that trial counsel didn't discuss the violent sexual predator provisions with Mr. Keene. However, rather than rely on this finding alone, the claim is dealt with as if the factual record is adequate.

Defense counsel cannot envision all of the potential consequences of a guilty plea and is not required to predict the future. The application of the act to Mr. Keene is a consequence collateral to the criminal proceeding and his guilty plea. As a result, Mr. Goen is not expected to explain its provisions to Mr. Keene when discussing the consequences of a guilty plea. Mr. Goen cannot be ineffective for failing to do an act outside the normal competency of trial counsel.

> Finally, Mr. Keene has failed to establish prejudice. He clearly was aware of the violent sexual predator provisions since he asked the judge taking his guilty plea about the act. In light of Mr. Keene's demonstrated knowledge of the act, prejudice is unproven.

PCR Ruling at 6-7, Doc. No. 23-2 at 21-22.

The Iowa Supreme Court dismissed Keene's PCR appeal as frivolous. *See* Doc. No. 23-2 at 23.

The Supreme Court has provided specific guidance on the issue of what information must be provided to a defendant at the time of a guilty plea. In overruling the Iowa Supreme Court's instruction that a court must provide a *pro se* defendant pleading guilty with specific, scripted admonishments, the Court observed as follows:

> This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002) (emphasis in original). We similarly observed in *Patterson*: "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver [of counsel], it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." 487 U.S. at 294, 108 S. Ct. 2389 (internal quotation marks omitted). . . . "[T]he information a defendant must have to waive counsel intelligently will "depend, in each case, upon the particular facts and circumstances surrounding that case." *Johnson [v. Zerbst]*, 304 U.S. [458], 464, 58 S. Ct. 1019[, 1023, 82 L. Ed. 2d 1461 (1938)]; [citation omitted].

*Iowa v. Tovar*, 541 U.S. 77, 92, 124 S. Ct. 1379, 1389-90, 158 L. Ed. 2d 209 (2004)

In *United States v. Ruiz*, cited by the *Tovar* Court, the Supreme Court considered, *inter alia*, whether prosecutors had to disclose material impeachment information before a defendant could make a knowing, intelligent, and voluntary waiver of counsel in a guilty plea proceeding. In holding such disclosure is not required under the Constitution, the Court observed as follows:

> Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant,. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2dc 30 (1977) ("There is no general constitutional right to discovery in a criminal case"). And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide. *Cf. Colorado v. Spring*, 479 U.S. 564, 573-575, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987) (Fifth Amendment privilege against self-incrimination waived when defendant received standard *Miranda* warnings regarding the nature of the right but not told the specific interrogation questions to be asked).
>
> . . . [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant

> might labor. *See Brady v. United States*, 397 U.S. [742,] 757, 90 S. Ct. 1463[, 25 L. Ed. 2d 747 (1970)] (defendant "misapprehended the quality of the State's case"); *ibid.* (defendant misapprehended "the likely penalties"); *ibid.* (defendant failed to "anticipate" a change in the law regarding relevant "punishments"); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (counsel "misjudged the admissibility" of a "confession"); *United States v. Broce*, 488 U.S. 563, 573, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (counsel failed to point out a potential defense); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (counsel failed to find a potential constitutional infirmity in grand jury proceedings).

*Ruiz*, 536 U.S. 622, 629-31, 122 S. Ct. 2450, 2455-56 153 L. Ed. 2d 586 (2002).

Applying these standards to Keene's claim results in a finding that the failure of the Iowa court and Keene's attorney to tell him about the *possible* application of the sexually violent predator statute to him is insufficient to negate his guilty plea, and his counsel was not ineffective in allowing him to plead guilty based on the information at hand. As the PCR court noted, Keene obviously knew of the statute's existence because he asked about its applicability to him. There was no way for either the judge or Keene's attorney to give him more information than they did because neither knew whether the statute ultimately would be applied to Keene. In any event, whether or not the statute was applied to Keene, it would not affect the length of his sentence or the other direct consequences arising from his guilty plea.

The court finds Keene's plea was entered voluntarily and intelligently, with full knowledge of all of the direct consequences of the plea. Accordingly, his attorney was not ineffective in allowing him to plead guilty without Keene having been advised as to whether or not the sexually violent predator statute would apply to him. Keene's petition should be denied as to this issue.

*IV. CONCLUSION*

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b) within ten (10) days of the service of a copy of this report and recommendation, that Keene's petition for writ of *habeas corpus* be denied in its entirety.

**IT IS SO ORDERED.**

**DATED** this 16th day of May, 2005.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[1]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).